J. S69024/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
    :     PENNSYLVANIA
    :
    :
    :
    v.     :
    :
NANCY MARIA HAAS,     :
    :
         APPELLANT     :     No. 1858 MDA 2015

Appeal from the Judgment of Sentence May 27, 2015
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005471-2011

BEFORE:  STABILE, DUBOW, and PLATT[*], JJ.

MEMORANDUM BY DUBOW, J.:            **FILED JANUARY 26, 2017**

Appellant Nancy Maria Haas appeals from the Judgment of Sentence entered by the York County Court of Common Pleas after a jury found her guilty of Theft by Unlawful Taking, 18 Pa.C.S. § 3921(a).  She challenges the weight and sufficiency of the evidence, certain evidentiary rulings, and the denial of her Pa.R.Crim.P. 600 Motion.  After careful review, we affirm.

The factual and procedural history of this case, as gleaned from the certified record, is as follows.  In August 2007, Jason Piper hired Appellant to work as his companies' part-time bookkeeper at $13.00 per hour, for up to

---

[*] Retired Senior Judge Assigned to the Superior Court.

20 hours per week.[1]  Appellant's initial responsibilities included balancing the company checkbook, and entering expenses and income in a ledger before transferring the data to QuickBooks bookkeeping software.  Shortly after she was hired, Piper agreed to have Appellant process the payroll for the company's then-three employees, a task that he had previously been paying an outside accountant to handle.[2]  Appellant and Piper were the only employees who had access to the computers containing the payroll software.

In 2008, Appellant began working from home, coming into the office once a week to pick up receipts and other paperwork needed to keep the books.  Although Appellant was supposed to bring files back to the office, she never did.

In August 2009, Appellant informed Piper that she needed a full-time job because she was not making enough money working part-time.  Piper agreed to keep her on as an independent contractor and thereafter paid her by company check based on her submitted invoices.  Appellant was no longer entitled to receive direct deposit payroll payments.

In November 2009, Piper received a letter from the IRS informing him that his payroll taxes, for the period from September 30, 2007, to December

---

[1] Piper had three companies, Myndsi Design, Inc., MediaLion, Inc., and Arthouse Lounge.

[2] That job entailed Appellant's recording employees' timesheets in QuickBooks and electronically transferring the information to Intuit Corporation, a payroll company, which disbursed payroll funds via direct deposit beginning in October 2007.

31, 2008, were delinquent by $140,622.92. Piper subsequently received a warning from the IRS that it would freeze his bank accounts. Appellant had previously assured Piper that she had set up payroll taxes to be paid through the payroll program, and told him that the IRS letter was a mistake and that she would look into it. In 2010, the bank informed Piper that the IRS had placed a levy on the Myndsi account due to the delinquent payroll taxes.

Piper contacted the IRS and Intuit and began working with his accountant, Jeanne Yeaple, to review the company's financial records. Yeaple's work showed that between 2008 and 2010, unauthorized electronic money transfers totaling over $84,000 were directed into accounts at PNC, M&T Bank, PSECU, Metabank, and Wachovia Bank. In addition, Intuit forwarded documentation showing the transfer of significant amounts of money from company accounts into Appellant's personal accounts, including unauthorized direct deposits after Appellant became an independent contractor.

Piper contacted the Fairview Township Police Department ("FTPD"). Chief Jason Loper conducted an investigation, taking Piper's statement, reviewing Piper's companies' bank statements, and reviewing Yeaple's work. On March 3, 2011, the FTPD filed a criminal complaint against Appellant, charging her with Theft by Unlawful Taking.

The FTPD arrested Appellant on March 9, 2011, and Magisterial District Judge Scott J. Gross held a preliminary arraignment. On March 10, 2011,

MDJ Gross issued subpoenas to obtain information from the financial institutions into which the unauthorized deposits had been made. Following numerous continuances requested by Appellant, MDJ Gross held Appellant's preliminary hearing on August 31, 2011. Appellant waived arraignment scheduled for October 14, 2011, and the court scheduled a pre-trial conference for November 17, 2011.

The court continued the case several times at Appellant's request.[3] On September 20, 2012, Appellant filed an Omnibus Pre-trial Motion for Relief seeking, *inter alia*, dismissal based on the issuance of subpoenas as investigatory tools, as well as quashal of the subpoenas. On October 25, 2012, MDJ Gross issued search warrants for the same banking institutions which had previously been served subpoenas.

Appellant filed more omnibus pretrial motions seeking, *inter alia*, the suppression of the bank records obtained by investigators pursuant to the subpoenas and the later-issued search warrants. After a hearing on December 19, 2012, the trial court quashed the subpoenas, finding that because they had been issued prior to the commencement of formal proceedings, the subpoenas were invalid. However, applying the independent source doctrine, the court denied Appellant's request to

---

[3] ***See*** N.T. Pre-trial Conf., 9/20/12, at 3; N.T. Pre-trial Conf., 7/19/12, at 4; N.T. Pre-trial Conf., 4/19/12, at 3; Order, dated 3/22/12 (filed 4/17/12) (noting Appellant's agreement to waive all Rule 600 time); N.T. Pre-trial Conf., 1/5/12, at 2; Order, dated 10/25/11.

suppress the information acquired by the later-issued search warrants, noting that the court had approved the search warrants based on information in the affidavits of probable cause that did not include any reference to the information obtained by the subpoenas. *See* Trial Court Op., dated March 14, 2013.

As part of discovery, the Commonwealth provided Appellant with copies of two hard drives from the PCs on which Piper's companies maintained their financial information. At a status conference on March 17, 2014, Appellant's counsel requested "a separate hard drive in the possession of [Piper that Appellant's forensic computer expert believed] may have been used as a server." N.T. Status Hearing, 3/17/14, at 4. The Commonwealth indicated that there was no server and counsel was likely referring to Piper's MacIntosh computer. Piper then indicated that he would have the "server" at the FTPD within two days from the hearing. *Id*. at 9. On March 19, 2014, Piper provided the hard drive from his MacIntosh computer to the Commonwealth.

On April 14, 2014, Appellant filed a Rule 600 Motion, which the court denied on August 1, 2014.

Appellant's jury trial ran from March 2, 2015, through March 9, 2015. Piper, James Bull (Piper's former employee), Chief Loper, Mark Baker (a

detective certified as a forensic computer expert), and Michael Haas (Appellant's former husband), testified.[4]

The Commonwealth proffered demonstrative charts and graphs compiled by Chief Loper showing, *inter alia*, how much and when Appellant had received money from both the Myndsi and MediaLion accounts via checks and unauthorized direct deposits, as well as a comparison between the full-time pay of James Bull and Appellant's "part-time" pay. Appellant's counsel objected, contending that because he was "just getting [the charts] now," he would have to do the math himself while listening to the witness's testimony. N.T. Trial, 3/2/15-3/9/15, at 528-29. The trial court admitted the charts, noting that Appellant's counsel could review the charts in the evening and correct any errors the next day. *Id*. at 529.

The following day, Chief Loper testified regarding the Intuit, QuickBook, and bank documents that showed that Appellant had made unauthorized deposits into her bank accounts numerous times a month, numerous times a week in some instances, and numerous times a day in one instance. *See*, *e.g*., N.T. Trial, at 539-48; 550-51. He testified that, relative to what her $13.00 hourly pay and reasonable hours would have

---

[4] Michael Haas read portions of a deposition transcript that was taken during the couple's divorce proceeding in which Appellant stated that she had taken "loans" from Piper for which there was no documentation. N.T. Trial, at 448. He also testified that Appellant had taken a "loan for about $5,000" from Piper to give to an attorney to whom he himself owed money in an unrelated case. *Id*. at 454.

provided, the documents showed that Appellant had wrongfully taken $86,737.47. After Chief Loper had provided testimony using the charts, Appellant's counsel renewed his objection, stating

> I just want to renew my objection based on the chart, the testimony was that these numbers are inaccurate because they are reversed and this is what created the chart. That means that the chart is inaccurate.

**See id**. at 549.[5] The court overruled the objection.

Appellant's counsel strenuously cross-examined Chief Loper on all aspects of his testimony and the demonstrative evidence.

Piper testified extensively regarding Appellant's pay, the amount of work she did for his companies, the unauthorized transactions, and the ruinous effect of her actions on his companies' existence. **See**, **e.g.**, N.T. Trial, at 195-96 (describing his frustration at being "locked out of the computer programs" while trying "to stop hemorrhaging the money" from what "was a sinking ship basically."). Piper testified further regarding the companies' computers, and his attempts to obtain records from Appellant. On cross-examination, he stated that there was "a server" that connected the companies' Macintosh computers that were used by the freelance artists, but stated that there was no server for the PCs on which the bookkeeping software was kept. N.T. Trial at 308. When asked where that server "is

---

[5] Prior to jury deliberations, Appellant's counsel again objected to the demonstrative evidence going to the jury based on an allegation of inaccurate information. **See** N.T. Trial, at 799-800.

now," Piper responded, "I believe that was the one that I turned over to the police." *Id*. Appellant's counsel did not cross-examine Piper regarding his use of the word "server."[6]

On March 9, 2015, the jury found Appellant guilty of theft by unlawful taking in an amount greater than $2,000. On May 27, 2015, at Appellant's sentencing hearing, Appellant's attorney stated that Appellant understood that restitution would be ordered, but that "at one point we will argue" that the amount of restitution "should be lower than the amount that was taken." *See* N.T. Sentencing, 5/27/15, at 10. The court sentenced Appellant to six to twenty-three months' incarceration in York County Prison followed by five years' probation. The court also ordered Appellant to pay $84,294.07 in restitution.

Appellant filed a Post-Sentence Motion, seeking (1) a hearing to determine the appropriate amount of restitution, averring that there had been no finding of fact with regard to the amount of restitution necessary, and the court had not made a determination as to Appellant's ability to pay restitution; and (2) a new trial because the Commonwealth had precluded Appellant from obtaining a "server by any means" and "could not have

---

[6] Chief Loper testified during trial that he did not recall Piper saying that he had a server. N.T. Trial, at 606. Loper also testified that he did not know if the Commonwealth's forensic computer investigators had found an email server on either of the hard drives. *See id*. at 608.

learned of the existence of the server at any time prior to the statement of Piper at trial." Post-Sentence Motion, filed 6/8/15, at ¶¶ 42, 48.

At a hearing on the Motion, the Commonwealth directed the court's attention to its Exhibits numbered 36 and 41, which showed, respectively, (1) a breakdown of every deposit that went from Piper's accounts into Appellant's accounts; and (2) an estimate of the restitution amount. The Commonwealth also noted that there was "ample testimony presented at the time of trial as far as the amount of the thefts that occurred in this case[.]" N.T. Post-Sentence Hearing, 8/4/15, at 17.

On October 14, 2015, the trial court denied Appellant's post-trial Motion. Appellant timely appealed. Both Appellant and the trial complied with Pa.R.A.P. 1925.

Appellant presents the following issues in her brief for our review:

I. The Trial Court committed an abuse of discretion when it failed to dismiss the charges against the Defendant for the Commonwealth's failure to exercise due diligence in bringing the Defendant to a speedy trial guaranteed by Rule 600 of the Pennsylvania Rules of Criminal Procedure and the Constitutions of the Commonwealth and the United States.

II. The Trial Court erred when it failed to suppress evidence obtained in violation of the Defendant's right to privacy, guaranteed by the Article I, Section 8 of the Pennsylvania Constitution. The Defendant had a constitutional right to privacy in her bank records. **See Commonwealth v. DeJohn,** 486 Pa. 32, 44 (1979). As such, a warrant supported by probable cause should have been obtained prior to the seizure of the Defendant's bank records. In this case, police improperly and unlawfully used a subpoena to obtain the records. This action clearly

> violated the warrant requirement and the Trial Court should have remedied this violation with suppression. Furthermore, the Commonwealth should not have been given the opportunity to cure its wrongdoing because the exclusionary rule aims to deter the type of police misconduct which was present in this case.
>
> III. The Trial Court erred when it admitted irrelevant and misleading exhibits at trial, over the Defendant's objections because the exhibits contained inaccurate information, prejudicial to the Defendant.
>
> IV. The Trial Court erred when it allowed the use of special verdict slips, contrary to established precedent in this Commonwealth.
>
> V. The verdict of guilty is against the weight of the evidence.
>
> VI. The Trial Court abused its discretion when it allowed, and prohibited the use of jury instructions to cure, testimony of government witnesses based upon discovery not provided to the Defendant.
>
> VII. The Commonwealth failed to present sufficient evidence to prove each element of the offense beyond a reasonable doubt.
>
> VIII. The Trial Court erred in awarding restitution without holding a hearing to determine that appropriate amount of Defendant's ability to pay.

Appellant's Brief at 10 (verbatim but reordered).

**Issue I – Rule 600**

We first address Appellant's Pa.R.Crim.P. 600 issue because, if meritorious, Appellant would be entitled to discharge, which would render her remaining issues moot. We analyze the denial of a Rule 600 discharge motion pursuant to the following standard of review:

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Armstrong*, 74 A.3d 228, 234 (Pa. Super. 2013).

Under Rule 600, "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). "[P]eriods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence." Pa.R.Crim.P. 600(C)(1). "Any other periods of delay shall be excluded from the computation." *Id*.

To determine whether dismissal is required for a violation of Rule 600, "a court must first calculate the 'mechanical run date,' which is 365 days after the complaint was filed." *Commonwealth v. Goldman*, 70 A.3d 874, 879 (Pa. Super. 2013). Thereafter, an adjusted Rule 600 run date is computed, and the defendant is entitled to discharge under Rule 600 only where trial started after the adjusted run date. *Id.* (noting that Rule 600 "provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after

- 11 -

subtracting all excludable and excusable time."). The adjusted run date is calculated by adding to the mechanical run date both excludable and excusable delay. *Id.* Excludable delay is delay caused by the defendant or his lawyer. *Id.* "Excusable delay is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence." *Id.* Excusable delay encompasses a wide variety of situations where the postponement of trial was outside of the Commonwealth's control. *Armstrong*, *supra* at 236. Additionally, "[d]ue diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Id.* at 236 (citation omitted).

Finally, we are mindful that Rule 600 not only guards a defendant's speedy trial rights, but also protects society's interest in prosecuting crime. "[T]he administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth." *Id.* at 235. Thus, if "there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime." *Id.*

In the instant case, the Commonwealth filed the complaint on March 3, 2011, and the mechanical run date was, thus, March 2, 2012.[7]  From March 3, 2011, until the filing of the Rule 600 Motion on April 14, 2014, 1,128 days elapsed, thus exceeding the 365-day period provided in Rule 600.

In its Opinion issued in support of its Order denying Appellant's Rule 600 motion, the trial court provided a detailed recitation of the delays attributable to Appellant before concluding that "a total of 707 days are attributable to [Appellant] or her counsel, and therefore, are excludable under Rule 600." **See** Trial Court Op., dated 8/1/14,at 5-6.

In analyzing whether the Commonwealth was entitled to any excusable time, the court noted that Appellant had conceded that the Commonwealth had acted with due diligence during the period from February 10, 2014, to April 14, 2014, which accounted for 63 days.  The court also found that an additional 76 days, from March 15, 2013, to May 30, 2013, was excusable due to discovery glitches, opining that communications between Appellant's counsel and the Commonwealth "show a reasonable effort to comply with [Appellant's] discovery request and to keep the case moving forward.  The court concludes that these 76 days are excusable time for the Commonwealth." **Id**. at 7.

The court, thus, concluded that of the 1,128 days that had elapsed, 707 days were attributable to Appellant and 139 days were excusable.  After

---

[7] This calculation accounts for the 2012 leap year.

deducting these sums, 282 days had elapsed before Appellant filed her Rule 600 Motion on April 14, 2014. As the trial court correctly noted, "[t]his time period falls within the 365-day period enunciated in Pa.R.Crim.P. 600(A)(2)(a)."

Appellant argues that an additional 39 days should be held against the Commonwealth because of the time that elapsed between the date the criminal complaint was filed and the first date scheduled for the preliminary hearing. **See** Appellant's Brief at 25. The Commonwealth is not responsible for that delay as the court's schedule is a matter outside the control of the Commonwealth. Accordingly, that 39-day delay is excusable "as a result of circumstances beyond the Commonwealth's control." **Goldman**, supra at 879.

Appellant also argues that discovery delays were not excusable. The trial court appropriately addressed this contention in its Opinion supporting the denial of Appellant's Rule 600 Motion, and we adopt its analysis as our own. **See** Trial Court Op., dated 8/1/14, at 7.[8] Our review of the record supports the trial court's conclusions, and in accordance with relevant statutory and case law, the trial court properly exercised its discretion in

---

[8] Appellant also asserts that the Commonwealth requested the continuance of the first preliminary hearing date so an additional 22 days is not excusable. **See** Appellant's Brief at 25. Appellant is wrong. The docket explicitly indicates that Appellant's attorney requested the continuance because Appellant was "not ready." **See** Docket Transcript.

denying Appellant's Rule 600 Motion to Dismiss. Accordingly, Appellant's first issue is without merit.

**Issue II – Suppression**

In this issue, Appellant challenges the trial court's decision to allow the admission of her bank records obtained pursuant to search warrants. Appellant avers that because she "had a constitutional right to privacy in her bank records," the trial court erred in failing to suppress the bank records because "police improperly and unlawfully used a subpoena to obtain the records." Appellant's Brief at 11. Appellant also argues that because the search warrant did not issue until after the Commonwealth already had the bank records in its possession, the trial court erred in concluding that "later-obtained warrants cured this defect under the independent source doctrine." *Id*. at 17. She concludes that "the Commonwealth should not have been given the opportunity to cure its wrongdoing because the exclusionary rule aims to deter the type of police misconduct which was present in this case." *Id*. at 11.

Our review of the denial of a suppression motion "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Stem*, 96 A.3d 407, 409 (Pa. Super. 2014) (citation omitted). Our scope of review is limited to the evidence presented

at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted).

The "exclusionary rule in Pennsylvania has consistently served to bolster the twin aims of Article I, Section 8 [of the Pennsylvania Constitution]; to-wit, the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause." *Commonwealth v. Edmunds*, 586 A.2d 887, 899 (Pa. 1991). The independent source doctrine applicable in Pennsylvania provides that "[i]f the prosecution can demonstrate that the allegedly tainted evidence was procured from an independent origin—a means other than the tainted sources—the evidence will be admissible." *Commonwealth v. Mason*, 637 A.2d 251, 254 (Pa. 1993) (quoting *Commonwealth v. Melilli,* 55 A.2d 1254, 1262 (Pa. 1989)).

In *Commonwealth v. McEnany*, 667 A.2d 1143, 1148–49 (Pa. Super. 1995), this Court reviewed and applied the independent source doctrine in a case where a subpoena had been issued prior to formal proceedings and the affidavit of probable cause supporting a subsequently-issued search warrant was not based on any information obtained through the subpoena. We found that "although the subpoena was issued improperly, the [ ] records [at issue] were obtained lawfully pursuant to an independent search warrant." *Id.* at 1149.

The trial court in the instant case concluded that the information contained in the affidavits of probable cause supporting the search warrants was independent of the information obtained from the banks' responses to the improper subpoenas. We agree.

When Piper first alerted the FTPD to Appellant's misconduct, he provided the FTPD with his business records and Yeaple's review showing a plethora of unauthorized deposits from company accounts to Appellant's accounts. That information supported the issuance of both the subpoenas and the search warrants. The affidavit of probable cause supporting the search warrants did not contain any additional information. The search warrant was issued on information that Chief Loper gleaned solely from the records and statement provided by Piper. *See* Trial Court Op., dated 3/14/13, at 9. Appellant does not dispute this fact. In fact, Appellant does not address this fact at all.

Accordingly, as in *McEnany*, the information obtained from the properly-issued search warrants was admissible under the independent source doctrine. Our review of the record supports the suppression court's factual findings, and "the legal conclusions drawn from those facts are correct." *Stem*, *supra*, at 409. Appellant's second issue, thus, fails.

**Issue III – Admission of Demonstrative Evidence**

Appellant next challenges the trial court's admission of demonstrative charts and graphs prepared by Chief Loper. She avers that the charts were

inaccurate and based upon faulty assumptions rather than any evidence, and she "objected to the introduction of this evidence as to relevance because it was inaccurate and therefore would be misleading to the jury." Appellant's Brief at 29.

Our review of a trial court's ruling on the admissibility of evidence is well-established:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Poplawski***, 130 A.3d 697, 716 (Pa. 2015) (citations and quotation marks omitted).

When considering the admissibility of demonstrative evidence, our Supreme Court has explained:

> [A] trial court may admit demonstrative evidence whose relevance outweighs any potential prejudicial effect. ***Commonwealth v. Reid***, [811 A.2d 530, 552 (Pa. 2002)]. The offering party must authenticate such evidence. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a). Demonstrative evidence may be authenticated by testimony from a witness who has knowledge "that a matter is what it is claimed to be." Pa.R.E. 901(b)(1). Demonstrative evidence such as photographs, motion pictures, diagrams, and models have long been permitted to be entered into evidence provided that the demonstrative evidence fairly and accurately represents that which it purports to depict. ***See Nyce v. Muffley***, [119 A.2d 530, 532 (Pa. 1956)].

> The overriding principle in determining if any evidence, including demonstrative, should be admitted involves a weighing of the probative value versus prejudicial effect. We have held that the trial court must decide first if the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect. **Commonwealth v. Hawk**, [709 A.2d 373, 376 (Pa. 1998)]. This Commonwealth defines relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. Relevant evidence may nevertheless be excluded "if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

**Commonwealth v. Serge**, 896 A.2d 1170, 1177 (Pa. 2006).

We first note that, contrary to Appellant's averment, she did not specifically object to the admission of the demonstrative evidence based on its relevancy. Accordingly, any attempt now to assert a relevancy challenge is waived. **See Commonwealth v. Stoltzfus**, 337 A.2d 873, 881 (Pa. 1975) (stating: "It has long been the rule in this jurisdiction that if the ground upon which an objection is based is specifically stated, all other reasons for [the evidence's] exclusion are waived, and may not be raised post[-]trial").

With respect to Appellant's objection that the evidence contained inaccurate information and, therefore, should have been excluded, the trial court stated in its Pa.R.A.P. 1925(a) Opinion:

> Due to the complexity of information we were asking the jury to digest, we believed that the objected-to exhibits would be helpful to the jury and, so, felt their relevance outweighed any

prejudice. It cannot be denied that while discussing one of the charts that included deposits into the Appellant's account, it was revealed that the chart included deposits that were reversed by the bank and were, therefore, no monies obtained by the Appellant; however, the transactions had gone through (N.T., 3/4/15, at 547). Defense counsel objected that the chart was presenting inaccurate information. *Id*., at 549. Commonwealth noted that, "the bottom line is that all those withdrawals were attempted regardless of whether they were reversed . . . ." *Id*. We agreed with the Commonwealth that the objected-to chart depicted what the Commonwealth said it did.

If the Superior Court disagrees then we would opine that this was harmless error. The jury heard Chief Loper explain that specific deposits represented in his chart had been reversed. Moreover, the reversed deposits were but small amounts in a much larger picture presented by the Commonwealth. [T]he jury was clearly informed that the reversed deposits are not alleged to have been retained by the Appellant[,] and Chief Loper's testimony clearly subtracted them from the total amount deposited by Intuit from the victim's account into the Appellant's.

Trial Court Op., dated 1/7/16 at 15-16.

As noted above, Chief Loper testified to the contents of the charts, and Appellant's counsel conducted extensive cross-examination to bring any inaccuracies to the jury's attention. The jury was, thus, fully apprised of the charts and their inaccuracies. In light of the extensive testimony pertaining to the demonstrative evidence, it is pure speculation on Appellant's part to assert that the jury was misled by the charts. After review of the record and relevant case law, we conclude that the trial court did not abuse its discretion in admitting the demonstrative evidence.

**Issue IV – Special Verdict Slips**

Appellant avers that the trial court erred in "allow[ing] special verdict slips to go to the jury to determine the value of the alleged stolen property." Appellant's Brief at 33. This issue is waived because Appellant failed to raise it in her Pa.R.A.P. 1925(b) statement, and raises it for the first time in her appellate brief. ***See*** Pa.R.A.P. 302(a); Pa.R.A.P. 1925(b)(3)(iv); ***Commonwealth v. Hill,*** 16 A.3d 484, 491 (Pa. 2011) (noting that "any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived." (citation and emphasis omitted)).

**Issue V – Weight of the Evidence**

Appellant next challenges the weight given the testimony presented by Chief Loper. In a one-paragraph critique containing no citations to the record and one citation pertaining to the trial court's standard of review, Appellant avers that Chief Loper "based much of his conclusions on assumptions." Appellant's Brief at 33. She then recites what Chief Loper allegedly failed to do before concluding that the verdict was against the weight of the evidence.

Appellant has failed to develop her argument and does not provide citations to the record and relevant supporting authority. ***See*** Pa.R.A.P. 2119. Her failure to comply with our rules of appellate procedure pertaining to proper briefing renders this claim waived. ***See*** Pa.R.A.P. 2119(a), (d); ***Commonwealth v. Miller,*** 721 A.2d 1121, 1124 (Pa. Super. 1998) (finding

claim waived where there was a "lack of factual background and citation to the record, coupled with the anemic state of the argument portion of Appellant's brief[ ]"); **Coulter v. Ramsden**, 94 A.3d 1080, 1088 (Pa. Super. 2014), *appeal denied*, 110 A.3d 998 (Pa. 2014).

Even if this issue were not waived, we would conclude that it has no merit. As we have oft noted, "a true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." **Commonwealth v. Morgan**, 913 A.2d 906, 909 (Pa. Super. 2006) (citation omitted). As such, an allegation that a "verdict was against the weight of the evidence is addressed to the discretion of the trial court." **Commonwealth v. Diggs**, 949 A.2d 873, 879 (Pa. 2008). Where the trial court has ruled on a weight claim, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, "[our] review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." **Commonwealth v. Shaffer**, 40 A.3d 1250, 1253 (Pa. Super. 2012) (citation omitted). "[T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact." **Id.**

"The trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Diggs***, ***supra*** at 879-80.

In the instant case, the trial court aptly noted:

> As we state in almost every appeal vis-à-vis a weight of the evidence challenge, it is true that there are certainly pieces of evidence which arguably undermine [the] Commonwealth's cases; however, the test is not whether there is any evidence that goes against [the] Commonwealth's assertions. Rather, this [c]ourt is to examine whether the jury's verdict was 'so contrary to the evidence as to shock one's sense of justice.' This [c]ourt's sense of justice was not shocked. We heard the same testimony as the jurors and were not shocked.

Trial Court Op., 1/7/16, at 19.

The trial court properly exercised its discretion in denying Appellant's weight claim. Accordingly, even if it were not waived, this issue would fail.

**Issue VI – Admission of Testimony/Discovery Violation**

Appellant next avers that the trial court erred by allowing a Commonwealth witness to testify to evidence that was allegedly in the possession of the Commonwealth but not turned over to Appellant, namely a "server." Without citation to the record or relevant authority, she avers that "[t]he Commonwealth's statement that there is no server is a discovery violation that had the effect of prejudicing [Appellant] . . . ." Appellant's Brief at 36. She contends that "since there appears to be a factual dispute as to whether the Commonwealth provided a server or merely a hard drive, the [t]rial [c]ourt should have ordered an evidentiary hearing on that matter

after the filing of [Appellant's] post-sentence motions." Appellant's Brief at 36-37. She also avers that the trial court could have cured the violation with her suggested jury instruction. *See id*. at 37-8, citing N.T.

Contrary to her characterization, Appellant does not present a challenge to the admission of testimony based on allegedly undisclosed evidence. In fact, Appellant points to no specific witness or testimony that was admitted based on the allegedly undisclosed "server." Rather, Appellant is asserting a discovery violation. We conclude the issue is waived and, moreover, meritless.

As with the prior claim, Appellant's failure to comply with our briefing requirements set forth in our rules of appellate procedure, by failing to cite to supporting authority and the record, renders this claim waived. *See* Pa.R.A.P. 2119; *Miller*, *supra*.

Moreover, even if the issue were not waived, the trial court provided a thorough treatment of this issue in its Opinion denying Appellant's Post-Sentence Motions, which, in the absence of waiver, we would adopt as our own to support our conclusion that this issue lacks merit. *See* Trial Court Op., dated 10/14/15, at 4-5 (where the trial court accurately detailed the facts pertaining to the alleged "server," that we also set forth above, before correctly concluding that there was no discovery violation because Piper "appeared … to be testifying about" a third Macintosh computer that he

referred to as a "server" about which "the defense was plainly aware [ ] and had opportunity to inspect following the March 17, 2014 hearing.").

We also conclude that, because Appellant failed to develop her jury instruction challenge beyond a bare assertion of error, that challenge is also waived. *See Coulter*, *supra*.

## Issue VII – Sufficiency of the Evidence

Appellant next challenges the sufficiency of the evidence supporting the jury's verdict. She states, in a self-serving, one-paragraph recitation, that all of Piper's business records were not produced, and Chief Loper "simply took the limited number of financial documents provided by Mr. Piper, and compared them to payments deposited into [Appellant's] accounts," then made an "assumption" for which "there was no evidence presented" to support a conclusion that Appellant "was depositing funds into her account which she did not earn." Appellant's Brief at 38. Appellant's argument is waived.

Appellant was convicted of Theft by Unlawful Taking—Movable Property, which provides in relevant part: "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a).

Appellant does not indicate which element of the crime she believes was supported by insufficient evidence. Her failure to discuss the elements of the crime and which of those elements the Commonwealth did not prove

renders this claim waived. *See Commonwealth v. McDonald*, 17 A.3d 1282, 1286 (Pa. Super. 2011) (citing Pa.R.A.P. 2119(a)); *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (finding "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived").

Moreover, even if Appellant had not waived the sufficiency challenge, the extensive testimony and evidence presented at trial, which the jury found to be credible, renders her challenge meritless. *See* N.T., 3/2/15-3/9/15. *See also Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa. Super. 2005) (noting that an appellate court may not substitute its judgment if the record contains support for the convictions).

**Issue VIII – Restitution**

Appellant next challenges the legality of the restitution ordered, averring that it is "based on speculation," not on "findings of fact … as to the amount of restitution necessary." Appellant's Brief at 40-41. She argues that before ordering restitution in the amount of $84,294.07, the trial court should have held a separate hearing to determine if that was an appropriate amount of restitution, and whether she had the ability to pay. *Id*. We disagree, and conclude that this issue is without merit.

Initially, we note that:

In the context of criminal proceedings, an order of restitution is not simply an award of damages, but, rather, a sentence. An

appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary.

***Commonwealth v. Kinnan***, 71 A.3d 983, 986 (Pa. Super. 2013) (citation omitted).

Our crimes code mandates the imposition of restitution in cases in which property has been stolen. In relevant part, it provides:

**§ 1106. Restitution for injuries to person or property**

**(a) General rule.--**Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

* * *

**(c) Mandatory restitution.--**

(1) The court **shall order full restitution**:

(i) **Regardless of the current financial resources of the defendant**, so as to provide the victim with the fullest compensation for the loss . . . .

* * *

(2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:

(i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate.

* * * *

18 Pa.C.S. § 1106 (emphasis added).

The record must support the amount of restitution ordered. *Commonwealth v. Boone*, 862 A.2d 639, 643 (Pa. Super. 2004). This Court has held:

> When fashioning an order of restitution, the lower court must ensure that the record contains the factual basis for the appropriate amount of restitution. *Commonwealth v. Pleger*, 934 A.2d 715, 720 (Pa. Super. 2007). The dollar value of the injury suffered by the victim as a result of the crime assists the court in calculating the appropriate amount of restitution. *Id.* The amount of the restitution award may not be excessive or speculative. *Commonwealth v. Rush*, 909 A.2d 805, 810 (Pa. Super. 2006)[ ]. It is well-settled that "[a]lthough it is mandatory under section 1106(c) to award full restitution, it is still necessary that the amount of the 'full restitution' be determined under the adversarial system with considerations of due process." *Commonwealth v. Ortiz*, 854 A.2d 1280, 1282 (Pa. Super. 2004).

*Commonwealth v. Atanasio*, 997 A.2d 1181, 1183 (Pa. Super. 2010).

Appellant here does not cite or otherwise acknowledge the applicability of the mandatory statute pertaining to restitution. Rather, she cites to, *inter alia*, Pa.R.Crim.P. 706 and *Commonwealth v. McLaughlin*, 574 A.2d 610, 617 (Pa. Super. 1990), to support her averment that "[i]n determining the amount of restitution, the court must consider the defendant's ability to pay." Appellant's Brief at 39. Her reliance on these authorities is misplaced.

Rule 706 pertains to fines and costs, not restitution, and is thus, inapplicable here. *McLaughlin* involved restitution ordered at the court's discretion after review of the pre-sentence report in connection with a third-

degree murder conviction, not a case involving stolen property, as in the instant case where restitution is mandatory.

Moreover, as noted **supra**, there was extensive testimony and other evidence submitted at Appellant's trial. At sentencing, the court noted that it had reviewed the pre-sentence investigative report and indicated that it ordered the restitution amount based on the trial testimony and record documents. **See** N.T. Sentencing, 5/27/15, at 15. In denying Appellant's post-sentence motion seeking a restitution hearing, the trial court opined:

> With the above recitation of the basics of law regarding restitution, we are left with a fairly straightforward proposition. As it is the Commonwealth's burden, what restitution did the Commonwealth show that there is an entitlement to? At trial, Chief Loper testified that it was his belief after analyzing the inordinate number of extravagant checks to the Defendant from the business accounts of the victim that the Defendant had wrongfully taken $86,737.47. We note, here, that we imposed restitution of $84,294.07, which we felt addressed the issues of sentencing.
>
> We do not believe that the law requires us to compute restitution down to the exact cent stolen in a case where the Defendant's intentional obfuscation makes such an endeavor impossible. Rather, we seek a factual basis, in the record, upon which we can, as reliably as possible, fix restitution. We believe that we did that based upon Chief Loper's testimony. Moreover, we remember that the dollar value of injury to the victim only assists in computing restitution. Having considered the factors appropriate to sentencing, we decline to grant Defendant's motion for a restitution hearing.

Trial Ct. Opinion, dated 10/14/15, at 3. In its Rule 1925(a) Opinion, the trial court added:

> . . . 18 Pa.C.S. § 1106(c)(1) states, in relevant part, that "the court shall order full restitution . . . regardless of the current

financial resource of the defendant, so as to provide the victim with the fullest compensation for the loss." . . . Chief Loper detailed how he figured the amount unlawfully taken by [ ] Appellant from Mr. Piper and we sentenced in an amount slightly less than that based upon the original charging information. In a case such as this, the Appellant's crime is predicated upon obfuscation that does not readily lend itself to neat valuations of loss. We have done our utmost to award full restitution without allowing that award to be excessive or speculative.

Trial Court Op., dated 1/6/16, at 22.

Our review of Section 1106 and relevant case law supports the trial court's denial of Appellant's post-sentence motion. Because the restitution amount was "determined under the adversarial system with consideration of due process," we conclude Appellant's sentence is legal. ***Ortiz***, ***supra***, at 1282.

Accordingly, in light of our conclusion that Appellant's issues are either waived or without merit, we affirm the Judgment of Sentence.[9]

Judgment affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/26/2017

---

[9] The parties are instructed to annex the trial court's Opinions dated August 1, 2014 (Rule 600 Motion), and October 14, 2015 (Post-Sentence Motion), to all future filings.

**IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA CRIMINAL DIVISION**

| | | |
|---|---|---|
| COMMONWEALTH | : | |
| | : | **NO. CP-67-CR-5471-2011** |
| v. | : | |
| | : | |
| NANCY HAAS, | : | |
| **Defendant** | : | |

COUNSEL OF RECORD:

Kelley L. Nelson, Esquire        Joseph D. Caraciolo, Esquire
Assistant District Attorney        Counsel for Defendant

## OPINION IN SUPPORT OF ORDER

The Defendant filed a motion to dismiss under Pennsylvania Rule of Criminal Procedure 600, docketed on April 14, 2014. A hearing was held on May 27, 2014, at which time the Court heard testimony and argument from both parties. At the conclusion of the hearing, the Court took the matter under advisement. After consideration of all evidence, argument and case law, the Court has **DENIED** the Defendant's motion to dismiss. It now issues this opinion in support of that order.

### I. Facts

The criminal complaint was filed against the Defendant for theft on March 3, 2011. The Defendant's preliminary arraignment was held on March 9, 2011. The Defendant's first preliminary hearing was scheduled for April 11, 2011. On March 16, 2011, the Defendant requested a continuance of her preliminary hearing, and the hearing was rescheduled for May 3, 2011. (See Commonwealth's Exhibit 15, Hearing 5/27/2014). On May 3, 2011, the Defendant requested another continuance to June 8, 2011. On June 8, 2011, the preliminary hearing began but was later continued on the record by the Defendant

1

until July 20, 2011. (See Commonwealth's Exhibit 16, 5/27/2014). The Defendant requested a final continuance of her preliminary hearing until August 31, 2011, and on that date, the hearing concluded.

The Defendant's formal arraignment was scheduled for October 14, 2011. The Defendant received a pretrial conference date for November 17, 2011. On October 21, 2011, the Defendant filed a written motion for a continuance, and the Defendant's pretrial conference was continued to January 5, 2012. The Defendant expressly waived Rule 600 time in this motion. (See Commonwealth's Exhibit 17, 5/27/2014). On January 5, 2012, the Defendant requested a continuance until March 22, 2012. On March 22, the Defendant requested a continuance until April 19, 2012. On April 19, the Defendant requested a continuance until July 19, 2012. On July 19, the Defendant again requested a continuance until September 20, 2012.

On September 20, 2012, the Defendant requested another continuance until December 27, 2012. Also on September 20, the Defendant filed her omnibus pretrial motion, and the Court scheduled a hearing for October 23, 2012. By joint motion, the parties requested a continuance of this hearing until December 19, 2012. This joint motion expressly states that the time would run against the Defendant for any Rule 600 purposes. (See Commonwealth's Exhibit 18, 5/27/2014). On December 19, the Court held a hearing on the Defendant's motion. The Court disposed of the Defendant's motion by order, dated March 15, 2013.

Also on December 19, 2012, the Commonwealth came into possession of a computer that had been formally requested by the Defendant. On that date, Detective Hundertmark placed the computer into temporary evidence storage. On January 7, 2013, Detective Buckwash began employment with the York County District Attorney's Office in the vacant computer forensic position. On January 28, 2013, Detective Buckwash removed the computer from temporary evidence storage and began his analysis. On

2

February 7, 2013, then-ADA Mueller contacted Attorney Caraciolo via email. This email advised defense counsel that the computer would be made available for inspection at the DA's office or that a blank hard drive could be provided. Defense counsel responded on February 14, 2013, and requested the hard drive specifications. The Commonwealth provided the specifications to defense counsel via email on March 1, 2013. On or about April 3, 2013, the Defendant provided a hard drive to the Commonwealth; however, this hard drive did not meet the specifications provided by the Commonwealth. On April 19, 2013, the Commonwealth advised defense counsel of the error. On May 15, 2013, defense counsel provided the Commonwealth with a hard drive that matched the specifications provided by ADA Mueller. On May 30, 2013, Detective Buckwash informed ADA Mueller that the second hard drive provided by the Defendant was not large enough.

On November 18, 2013, ADA Jeff Rigby contacted the Court's chambers to schedule a status conference in this case. The Court held a status conference on November 25, 2013. During this status conference, the Defendant requested a continuance until the February 2014 trial term. As agreed to under this continuance, the Defendant accepted the time from November 25 through February 14—the last day of the February 2014 trial term. The Defendant conceded during the hearing on the Defendant's Rule 600 motion that the Commonwealth has acted with due diligence in this case since the end of the February 2014 trial term. The Defendant filed the current motion to dismiss under Rule 600 on April 14, 2014, and the Court received supporting memoranda from both parties by June 18, 2014.

## II.     Motion to Dismiss

Under Rule 600 of the Pennsylvania Rules of Criminal Procedure, "trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa. R. Crim. P. 600(A)(2)(a). "Trial shall be deemed to commence on the date the

3

trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*." Pa. R. Crim. P. 600(A)(1). When computing the 365-day time period for trial commencement, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence." Pa. R. Crim. P. 600(C)(1). "Any other periods of delay shall be excluded from the computation." *Id.* When a defendant is not brought to trial in accordance with this rule, that defendant, at any time before trial, may file for the dismissal of the charges with prejudice. Pa. R. Crim. P. 600(D)(1).

Before any dismissal under Rule 600, the Court "must account for any excludable time and excusable time." *Commonwealth v. Colon*, 2014 PA Super. 45, 2014 WL 895216 (Pa. Super.). "Excludable time is time that is attributable to the defendant or [her] counsel." *Id.* "Excusable [time] is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence." *Id.*

When arguing for due diligence, the Commonwealth "has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence." *Commonwealth v. Bradford*, 46 A.3d 693, 702 (Pa. 2012). The inquiry for the Court is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence. See *Commonwealth v. Matis*, 710 A.2d 12 (Pa. 1998). It is a firmly established principle under Pennsylvania law that "'due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Bradford*, 46 A.3d at 704 (quoting *Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010). If the delay resulted from circumstances beyond the Commonwealth's control and despite its due diligence, the time is excusable. See *Commonwealth v. Browne*, 584 A.2d 902 (Pa. 1990).

4

First, the Court must establish the mechanical run date. Since the criminal complaint was filed on March 3, 2011, the mechanical run date would be March 2, 2012, which accounts for the 2012 leap year. From March 3, 2011, until the filing of the Rule 600 motion on April 14, 2014, the Court calculates that 1,128 days elapsed, which exceeds the 365-day period enunciated in Rule 600.

Since over 365 days have elapsed, the Court must then consider whether any excludable time exists that is attributable to the Defendant or his counsel. See *Colon*, supra. The Court finds numerous lengths of time attributable to the Defendant in this case. Those lengths of time include the following:

1. April 11 to May 3, 2011; Defendant continued preliminary hearing (22 days)

2. May 3 to June 8, 2011; Defendant continued preliminary hearing (36 days)

3. June 8 to July 20, 2011; Defendant continued preliminary hearing (42 days)

4. July 20 to August 31, 2011; Defendant continued preliminary hearing (42 days)

5. November 17, 2011 to January 5, 2012; Defendant continued pretrial conference (49 days)

6. January 5 to March 22, 2012; Defendant continued pretrial conference (77 days)

7. March 22 to April 19, 2012; Defendant continued pretrial conference (28 days)

8. April 19 to July 19, 2012; Defendant continued pretrial conference (91 days)

9. July 19 to September 20, 2012; Defendant continued pretrial conference (63 days)

10. September 20, 2012 through March 15, 2013; Defendant filed pretrial motion (176 days)

11. November 25, 2013 to February 14, 2014; Defendant requested continuance (81 days)

The numerous continuances during the preliminary hearing stage, from April 11 to August 31, 2011, total 142 days. The Defendant is also responsible for the block of time between November 17, 2011, through March 15, 2013, due to numerous continuance requests and an outstanding pretrial motion. This period

accounts for 484 days. Finally, the period mentioned in #11 accounts for 81 days.

The Court calculates that a total of 707 days are attributable to the Defendant or her counsel and, therefore, are excludable under Rule 600. After deducting the 707 days of excludable time from the 1,128 days that have elapsed, the Court concludes that 421 days elapsed before the Defendant filed his Rule 600 motion on April 14, 2014. This time period still exceeds the 365-day period enunciated in Pa. R. Crim. P. 600(A)(2)(a), so the Court must continue its Rule 600 analysis.

The Court must now consider whether the Commonwealth is entitled to any excusable time under Rule 600. See *Colon*, supra. For excusable time, the issue for the Court is whether the delay resulted from circumstances beyond the Commonwealth's control and despite its due diligence. See *Colon*, supra (citing *Commonwealth v. Goldman*, 70 A.3d 874, 879-80 (Pa. Super. 2013)).

The Defendant concedes that the Commonwealth has acted with due diligence from February 10, 2014, to April 14, 2014, the date on which the Defendant filed her motion. This time period accounts for 63 days. After deducting the 63 days of excusable time from the 421 days (including excludable time), the Court concludes that 358 days elapsed before the Defendant filed his Rule 600 motion on April 14, 2014. This time period falls within the 365-day period enunciated in Pa. R. Crim. P. 600(A)(2)(a).

Additionally, the Court finds that the Commonwealth acted with due diligence prior to the conceded 63 days previously mentioned. Specifically, the evidence presented during the Rule 600 hearing persuades the Court that the Commonwealth acted with due diligence between March 15 and May 30, 2013, which accounts for 76 days. The Court finds that March 15, 2013, is the date to start considering due diligence because on that date, the Court issued its opinion on the Defendant's pretrial motion. Time before that date would run against the Defendant because her motion was outstanding. The Commonwealth presented evidence of numerous communications between defense counsel and ADA

6

Mueller regarding information contained in a computer. (See Commonwealth Exhibits 1 through 13, 5/27/2014). Although some complications arose while trying to copy the computer's hard drive for the Defendant, the Court finds that the Commonwealth's constant contact and efforts to provide defense counsel with a copied hard drive show due diligence in this case. These communications show a reasonable effort to comply with the Defendant's discovery request and to keep the case moving forward. See *Bradford,* supra. The Court concludes that these 76 days are excusable time for the Commonwealth. After deducting these 76 days of additional excusable time from the 338 days (previously calculated total), the Court concludes that 262 days elapsed before the Defendant filed her Rule 600 motion on April 14, 2014. This time period falls within the 365-day period enunciated in Pa. R. Crim. P. 600(A)(2)(a).

The Court additionally notes that any time accumulating between April 14, 2014, and the date this order is docketed is excludable time against the Defendant. Since the Defendant filed a motion to dismiss requiring the Court to issue a decision, the Defendant is responsible for the time between the filing of the motion and the date of decision. The Court concludes that only 262 days have elapsed for Rule 600 purposes. At this point in the case, the Court further concludes that the Commonwealth has 103 days from the date that this decision is docketed to bring the Defendant to trial and to comply with the parameters of Rule 600.

7

III.     <u>Conclusion</u>

For the reasons stated above, the Court hereby **DENIES** the Defendant's Motion to Dismiss.

BY THE COURT,

DATED: August 1st, 2014

MICHAEL E. BORTNER, JUDGE

8

**IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH        :        NO. CP-67-CR-0005471-2011

                  :

      v.              :

                  :

NANCY HAAS,         :

      **Defendant**      :

COUNSEL OF RECORD:

Kelley L. Nelson, Esquire          Joseph D. Caraciolo, Esquire
Counsel for the Commonwealth     Counsel for the Defendant

## OPINION IN SUPPORT OF ORDER

The Defendant filed a Post-Sentence Motion on June 8, 2015. A hearing was held on those motions on August 4, 2015. The parties having agreed that testimony was unnecessary, this Court heard argument from counsel and, at the conclusion of the Hearing, took the matter under advisement. After consideration of all relevant testimony, evidence, and case law, this Court has **Denied** the Defendant's Post-Sentence Motion and now issues this Opinion in Support of that Order.

I.    **Post-Sentence Motions**

A.    Restitution

In her first motion, the Defendant challenges our finding of restitution. The Defendant's challenges are wide-ranging and touch upon all pertinent areas of consideration in setting restitution. In total, the Defendant was ordered to pay restitution of $84,294.07. The Defendant's

1

sought-after remedy is for a restitution hearing to be set.

18 Pa.C.S.A. § 1106(c)(2)(i), which governs the setting of restitution, states, in pertinent part:

**(c) Mandatory restitution.—**

. . .

(2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:
> (i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution . . . and such other matters as it deems appropriate.

*Commonwealth v. Atanasio*, 997 A.2d 1181,1183 (Pa. Super. Ct. 2010). As the Superior Court has stated, "[i]t is the Commonwealth's burden of proving its entitlement to restitution." *Id.* (citing *Commonwealth v. Boone*, 862 A.2d 639, 643 (Pa. Super. Ct. 2004)). In *Commonwealth v. Atanasio*, the Superior Court made clear that the restitution amount must have a factual basis that can be found in the record. 997 A.2d 1181, 1183 (citing *Commonwealth v. Pleger*, 934 A.2d 715, 720 (Pa. Super. Ct. 2007)). The *Atanasio* court goes on to say that, "the dollar value of the injury suffered by the victim as a result of the crime assists the court in calculating the appropriate amount of restitution." *Id.* And, the restitution ordered cannot be excessive or speculative. *Atanasio*, 997 A.2 at 1183 (citing *Commonwealth v. Rush*, 909 A.2d 805, 810 (Pa. Super. Ct. 2006)). To this end, we are cognizant that, "[a] restitution award must not exceed the victim's losses." *Commonwealth v. Pleger*, 934 A.2d

2

715, 720 (Pa. Super. Ct. 2007) (citing *Commonwealth v. Fuqua*, 407 A.2d 24, 26 (Pa. Super. Ct. 1979)).

With the above recitation of the basics of law regarding restitution, we are left with a fairly straightforward proposition. As it is the Commonwealth's burden, what restitution did the Commonwealth show that there is an entitlement to? At trial, Chief Loper testified that it was his belief, after analyzing the inordinate number of extravagant checks to the Defendant from the business accounts of the victim that the Defendant had wrongfully taken $86,737.47. We note, here, that we imposed restitution of $84,294.07, which we felt addressed the issues of sentencing.

We do not believe that the law requires us to compute restitution down to the exact cent stolen in a case where the Defendant's intentional obfuscation makes such an endeavor impossible. Rather, we seek a factual basis, in the record, upon which we can, as reliably as possible, fix restitution. We believe that we did that based upon Chief Loper's testimony. Moreover, we remember that the dollar value of injury to the victim only *assists* in computing restitution. Having considered the factors appropriate to sentencing, we decline to grant Defendant's motion for a restitution hearing.

B.  Discovery Violations

The Defendant's second post-sentence motion concerns the existence of a server. In her Post-Sentence Motion, Defendant avers that the Commonwealth violated the rules pertaining to discovery by making definite statements that there was no server as alleged by the defense, which

3

the Defendant further avers was disproven by the victim's statements at trial. We believe this motion fails factually.

At a status hearing on March 17, 2014, counsel for the Defendant identified a specific hard drive that the defense alleged might have been utilized as a server and that the defense therefore wished to examine. (Notes of Testimony, 3/17/14, at 4.) The Commonwealth then described the hard drive in question as belonging to a Macintosh computer and disputed that it was ever used as a server. *Id.*, at 5. Commonwealth noted that another employee had access to a second Macintosh. *Id.*, at 7. In addition, Commonwealth divulged that there was an additional PC. *Id.*, at 5 and 7. At the March 17, 2014 hearing, defense counsel stated that he had only been made aware of the Macintosh "server" on the day of the hearing. Defendant's Post-Sentence motions note that the defense was aware of this server prior to the hearing and as early as March 12, 2014. See Defendant's Post-Sentence Motion at unnumbered page 5. At the conclusion of the March 17, 2014 hearing, it was agreed that the victim would deliver the Macintosh "server" in question to the Fairview Township Police station for inspection by the defense. *Id.*, at 9-10.

At trial, Mr. Piper testified that his companies had five computers in the office consisting of three Macintosh computers and two PC computers. As recounted above, the defense was aware of two PC computers. And from the March 17, 2014 hearing, defense counsel was aware of two Macintosh computers at the businesses. Mr. Piper's trial testimony may have revealed a third Macintosh; however, it is not this Court's recollection that this third Macintosh was a potential server. Rather, Mr. Piper appeared, to this Court, to be testifying about the Macintosh

4

"server" that the defense was plainly aware of and had opportunity to inspect following the March 17, 2014 hearing. We see no discovery violation here and therefore deny Defendant's requests to set aside the verdict of the jury, compel discovery, and order a new trial.

## II. Conclusion

For the reasons stated above, the Court hereby **Denies** the Defendant's post-sentence motions.

BY THE COURT,

DATED: October _14_, 2015

_____
MICHAEL E. BORTNER, JUDGE

RECEIVED/FILED
YORK COUNTY
JUDICIAL CENTER
2016 OCT 14 PM 1:00
DON O'SHELL
CLERK OF COURTS