COMMONWEALTH of Pennsylvania, Appellant,

v.

Elwood BOONE, Appellee.

Commonwealth of Pennsylvania, Appellee,

v.

Elwood Boone, Appellant.

Commonwealth of Pennsylvania, Appellee,

v.

Vanessa Brown, Appellant.

Commonwealth of Pennsylvania, Appellant,

v.

Vanessa Brown, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 14, 2004.
Filed Nov. 19, 2004.

---

Mary Huber, Asst. Dist. Atty., Philadelphia, and Hugh J. Burns, Asst. Dist. Atty., Philadelphia, for Com.

Robert M. Gamburg, Philadelphia, for Boone.

Joseph C. Santaguida, Philadelphia, for Brown.

BEFORE: FORD ELLIOTT, MONTEMURO * and JOHNSON, JJ.

OPINION BY MONTEMURO, J.:

¶ 1 In this appeal we consider identical issues raised in unconsolidated cross-appeals from the judgments of sentence imposed on May 14, 2003, in the Philadelphia County Court of Common Pleas.[1] The Commonwealth appeals the restitution awards entered against co-defendants Elwood Boone and Vanessa Brown,[2] who challenge their respective convictions of forgery, theft by unlawful taking, theft by deception, criminal conspiracy and unsworn falsification to authorities. For the following reasons, we vacate in part and affirm in part.

¶ 2 The convictions arose from Boone and Brown's participation in fraudulent real estate transactions involving four Philadelphia area properties. The original title owner of three of these properties, Roscoe Murphy, Jr., has reportedly lived in South Africa since the early 1990's and did not appear at trial.[3] However, his wife Ernette Elizabeth Murphy,[4] with whom he jointly owned one of the parcels, his former paramour Deanna Lewis, and his son Roscoe Murphy, III, who was also named in the deeds, were all called to testify. Two of Murphy's lots each contained a residential dwelling while the third was a connecting lot with a swimming pool. The lengthy, complicated series of transactions and relationships are detailed in the trial court's Opinions,[5] the thrust of which is that Boone and Brown ultimately obtained control of the properties after purporting to be siblings of Murphy Jr., and recording forged deeds granting themselves ownership of the properties for $1 each. In addition, they falsified loan documents and secured mortgages in excess of $300,000 using the stolen properties as collateral.

¶ 3 The co-conspirators were convicted in November of 2002, and sentenced in May of 2003. Boone was originally sentenced to concurrent terms of nine to twenty-three months' house arrest with electronic monitoring and five years' reporting probation. On July 1, 2003, however, the trial court revoked his house arrest and imposed a sentence of incarceration. Brown was sentenced to concurrent terms of five years' reporting probation. Each co-defendant was ordered to pay restitution in the amount of $21,307. Thereafter, the docket became muddled by a series of appeals and post trial motions ultimately resulting in the quashal, and subsequent re-filing, of each party's direct appeal. *See Id.* at 2 n. 1.

¶ 4 We first consider the Commonwealth's sole issue, which challenges the trial court's decision to award monetary restitution in lieu of returning the properties to their rightful owners. Specifically, the Commonwealth contends that a monetary award amounts to a forced sale and

---

* Retired Justice assigned to Superior Court.

1. The parties submitted separate but duplicate briefs, and the trial court issued identical opinions.

2. A third co-defendant, Kim Jordan, is not party to this appeal. A fourth, Evelyn Anderson, was never apprehended and remains a fugitive.

3. The deceased owner of the fourth property was not represented at trial.

4. The couple was still married at the time of trial despite separating in 1979.

5. *See* Trial Ct. Op., 2/13/04, at 2–16; Trial Ct. Op., 2/17/04, at 2–16.

cannot fully compensate an aggrieved party for his or her loss because realty is unique. Moreover, it is contended that the amount awarded here does not reflect the parcels' true value. As a result, the Commonwealth requests that ownership be vested in the owners specified in the last legally recorded deeds.

¶ 5 A trial court's authority to order restitution is established in 18 Pa.C.S.A. § 1106, which provides in pertinent part:

§ **1106. Restitution for injuries to person or property**

**(a) General rule.** Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefore.

\* \* \*

**(c) Mandatory restitution.**

(1) The court shall order full restitution[.]

\* \* \*

**(h) Definitions.** As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

\* \* \*

**"Injury to property."** Loss of real or personal property, including negotiable instruments, or decrease in its value, directly resulting from the crime.

\* \* \*

**"Property."** Any real or personal property, including currency and negotiable instruments of the victim.

\* \* \*

**"Restitution."** The return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court.

18 Pa.C.S.A. § 1106(a), (c), (h).

¶ 6 An order of restitution is a sentence, and thus, the amount awarded is within the sound discretion of the trial court and must be supported by the record. *See Commonwealth v. Opperman*, 780 A.2d 714, 718 (Pa.Super.2001). "Restitution may be imposed only for those crimes to property or person where the victim suffered a loss that flows from the conduct that forms the basis of the crime" for which the defendant is convicted. *Commonwealth v. Dohner*, 725 A.2d 822, 824 (Pa.Super.1999). A sentence of restitution is designed to impress "upon the offender the loss he has caused and his responsibility to repair that loss as far as it is possible to do so." *Commonwealth v. Wood*, 300 Pa.Super. 463, 446 A.2d 948, 950 (1982) (citation and internal quotations omitted). The sum may not be speculative or excessive.

¶ 7 The trial court held that title could not be conveyed accurately without the testimony of Murphy, Jr., the primary title owner. Consequently, the court assigned the properties an aggregate restitution value of $63,921 to be divided equally between the three co-conspirators. We first find that because the validity of the deeds prior to Brown and Boone's activities was unquestioned, the trial court erred in concluding that proper title could not be ascertained without the testimony of Murphy, Jr. Moreover, given the irreplaceable nature of real property and the conflicting value estimates submitted by the parties, the court's assessment of the monetary value of the properties is speculative

and thus inadequate as an award of restitution.

¶ 8 To address these errors in reverse order, the properties remained uninhabited and fire damaged for a number of years before Boone and Brown fraudulently took possession and completed improvements. Therefore, the victims' damages are equal to the parcels' values at the time Boone and Brown took possession; however, that sum was not established at trial. This fact, coupled with the disparity between the current and pre-improvement values, makes clear that the trial court did not calculate the amount of restitution with the requisite degree of accuracy. Indeed, nowhere is the trial court's method of valuation explained. *See* Trial Ct. Op., 2/13/04, at 28; Trial Ct. Op., 2/17/04, at 28. We therefore vacate the sentence of restitution.

▮▮▮▮▮ ¶ 9 However, Boone and Brown may not enjoy the fruits of their crimes. For the principles underlying the restitution statute to be implemented, the victims must be made whole. To accomplish this requires returning the property to the owners of record immediately preceding the fraudulent transfer. Such a transfer may be achieved without the benefit of Murphy, Jr.'s testimony as it simply restores the arrangement disrupted by the co-conspirators. Unfortunately, the procedural mechanism for transferring ownership of realty, that is, not merely possession, but title, is nowhere described: the Commonwealth has supplied no authority on this point, and our own researches have uncovered none. Obviously, though, more is involved than unalloyed restitution, as matters outside the purview of the criminal justice system must be addressed. And, while the restitution statute specifically preserves private remedies, no guidance is offered as to the interaction between these remedies and the protocols of

a criminal matter. The relevant provision does contain some clues applicable to the instant matter, however. The statute declares that:

> ***Preservation of private remedies.***— No judgment or order of restitution shall debar the owner of the property or the victim who sustained personal injury, by appropriate action, to recover from the offender as otherwise provided by law, provided that any civil award shall be reduced by the amount paid under the judgment.

18 Pa.C.S.A. § 1106(g).

¶ 10 At the sentencing hearing, the Commonwealth presented the trial court with a proposed order directing the Recorder of Deeds of Philadelphia County to strike off the deeds transferring ownership of the property from the respective grantors to Brown, Boone and their co-conspirator. The court declined to enter the order on grounds that, as noted above, Murphy, Jr. was absent from the proceedings, and because the directives concerned civil matters not within its jurisdiction. Although we have already voiced our disagreement with the first component of this rationale, the second is consistent with section 1106(g), which leaves to the "owner of the [affected] property or the victim" the task of seeking recovery "from the offender as otherwise provided by law."

▮▮▮▮ ¶ 11 Monetary restitution alone is, as noted, inadequate in this situation, and more than mere possession is necessary to qualify as complete recompense given the nature of the loss sustained. Thus further steps, to restore title, must be undertaken to "return" the property to the victims. And, although the Commonwealth's proposed order represented an attempt to rectify the omission, it is no part of the sentencing code for the court to direct the activities of the Recorder of Deeds. A private remedy, which in the context is

civil in nature, is thus necessarily implicated, and the language of the statute places on the victim(s) the onus of investigating and applying the correct procedure. The only procedure designed to accomplish the necessary correction of the deeds is an action to quiet title.

¶ 12 Accordingly the sequence to be followed is first, for possession of the property to be transferred by order of the court to the original title holders, that is, to order that Boone and Brown make restitution to that extent since they cannot transfer title they do not have. "In general, ... actual possession of land means dominion over the property; it is not the equivalent of occupancy." *Moore v. Duran,* 455 Pa.Super. 124, 687 A.2d 822, 827 (1996), *appeal denied,* 549 Pa. 703, 700 A.2d 442 (1997) (citations omitted). They may, however, be ordered to relinquish possession, which under the terms of the statute "returns" that aspect of the property they do have. Once the victims gain possession, they may seek to quiet title under Pa.R.C.P. 1061,[6] since only a party in possession may commence such a suit. *Siskos v. Britz,* 567 Pa. 689, 790 A.2d 1000, 1007 (2002). Under circumstances such as those involved here, the action would be resolvable on the basis of the pleadings alone. While these proceedings may well be regarded as *pro forma,* they are nevertheless consistent with section 1106(g), and have the further advantage of producing incontestably valid title to the property.

We accordingly remand for these procedures to be instituted.

¶ 13 In their cross-appeals, Boone and Brown raise two issues:

1. DID THE COURT COMMIT REVERSIBLE ERROR WHEN IT REFUSED TO GRANT [BOONE AND BROWN'S] MOTION FOR A MISTRIAL AFTER DETECTIVE ANDREW SNYDER VIOLATED [BOONE AND BROWN'S] CONSTITUTIONAL RIGHTS BY TESTIFYING THAT [BOONE AND BROWN] INVOKED THEIR RIGHT TO REMAIN SILENT AND SOUGHT ADVICE OF LEGAL COUNSEL?

2. WAS THE EVIDENCE PRESENTED BY THE COMMONWEALTH AT TRIAL INSUFFICIENT UPON WHICH TO BASE A GUILTY VERDICT?

*See* Boone's Brief at 4; Brown's Brief at 4.

¶ 14 Preliminarily, we note that Boone's issues have been waived for purposes of this appeal as he disregarded the trial court's November 3, 2003, Order directing that a Pa.R.A.P. 1925(b) Statement be filed. *See Commonwealth v. Simmons,* 846 A.2d 142, 143–44 (Pa.Super.2004).[7] Nevertheless, no relief would be forthcoming for Boone even if we were to address the merits of his appeal as we have found Brown's identical issues to be deficient.

¶ 15 Brown first contends that she was unduly prejudiced both by testimony refer-

6. Pa.R.C.P. 1061 reads in pertinent part:

  (b) The action may be brought

  * * *

  (2) where an action of ejectment does not lie, to determine any right, lien, title or interest in the land or determine the validity of any document, obligation or deed affecting any right, lien, title or interest in land;

(3) to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land.

7. The record does not indicate whether a Rule 1925(b) Statement was ordered from or submitted by Brown.

ring to her refusal to speak with police without an attorney present, and the trial court's failure to provide an adequate limiting instruction. She maintains that the trial court should have granted a mistrial. We disagree.

¶ 16 "Initially, we note that whether to declare a mistrial is a decision which rests within the sound discretion of the trial court, whose exercise thereof will not be reversed absent an abuse of such discretion." *Commonwealth v. Pearson,* 454 Pa.Super. 313, 685 A.2d 551, 554 (1996), *appeal denied,* 549 Pa. 699, 700 A.2d 439 (1997) (citation and internal quotations omitted). While any reference to an accused's decision to invoke the right to remain silent is a clear violation of the constitutional right against self-incrimination, not every such reference requires the declaration of a mistrial. *See id.* (citations omitted). The mention of an accused's post arrest silence constitutes reversible error unless a prompt and adequate curative instruction is given, *see id.,* or the reference is proven harmless. *See Commonwealth v. Clark,* 533 Pa. 579, 626 A.2d 154, 158 (1993). Before deciding whether a cautionary instruction can cure a reference to an accused's silence, a court must consider the nature of the reference, how it was elicited, whether it was exploited by the district attorney, and the promptness and adequacy of the cautionary instruction. *See Pearson, supra* at 554 (citing *Commonwealth v. Gbur,* 327 Pa.Super. 18, 474 A.2d 1151, 1154 (1984)).

¶ 17 Here, although the detective's testimony was improper, we find no grounds for reversal. When asked why handwriting exemplars were not taken, the detective responded "when I had arrested [Boone and Brown], they wanted their at-

torneys. They didn't want to give me a statement. They didn't want to say anything," (N.T., 11/20/02, at 73), which prompted an immediate objection. The question gives no indication that the Commonwealth intended to elicit such testimony from the detective, nor was there any attempt to exploit the statement later in the proceedings. Moreover, the trial judge sustained the defense objection, ordered the testimony stricken, and instructed the jury to disregard the declaration.[8] Although the curative instruction was not detailed, succinct instructions have been found sufficient in the past. *See Commonwealth v. Mays,* 361 Pa.Super. 554, 523 A.2d 357, 359 (1987) (holding prompt instruction to "completely disregard the testimony of the officer" adequately precluded further prejudice).

¶ 18 In addition, an error is considered harmless where the defendant was not prejudiced or the prejudice was merely *de minimis,* the erroneously admitted evidence was cumulative of untainted evidence, or uncontradicted and properly admitted evidence of guilt was so overwhelming as to nullify any prejudice. *See Commonwealth v. Jennings,* 405 Pa.Super. 590, 592 A.2d 1370, 1374 (1991) (citation omitted). Here, ample proof was presented to convict Brown, effectively neutralizing any prejudicial effect from the detective's testimony.

¶ 19 Brown next raises several claims of insufficient evidence to support the various convictions. After an independent review of the record, the parties' briefs, and the relevant statutory and case law, we find that because the court's Opinion thoroughly discusses and properly disposes of these issues, we rest on its well-reasoned basis.

8. In addition to directing that the statement be stricken and that the jury disregard it, the judge issued a second curative instruction while charging the jury. *See* N.T., 11/25/02, at 92.

Accordingly, we affirm the judgment of sentence with respect to both Boone and Brown's appeals.

¶ 20 Judgment of sentence affirmed in part and vacated in part. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.