J-S54038-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK SEISIRO SOLOMON | : | |
| | : | |
| Appellant | : | No. 1407 MDA 2018 |

Appeal from the Order Entered July 23, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001122-2018

BEFORE:  BOWES, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                **FILED FEBRUARY 25, 2020**

Patrick Seisiro Solomon ("Appellant") appeals from the Order modifying restitution entered after a hearing. Appellant contends that the court erred in ordering restitution in an amount equal to the victim's initial purchase price of the stolen collectible coins, rather than calculating it based on the market value of the coins when they were stolen.  We reverse and remand for further proceedings.

We glean the following relevant facts from our review of the certified record and the trial court's recitation of the facts.  ***See*** Tr. Ct. Op., dated Apr. 25, 2019.  On June 11, 2018, Appellant pled guilty to Theft by Unlawful

Taking.[1] In exchange, the Commonwealth dismissed a charge of Receiving Stolen Property. That same day, the court sentenced Appellant to a negotiated term of three to twenty-three months' incarceration. The amount of restitution was not part of the negotiated sentence.

The Commonwealth indicated at sentencing that the victim claimed restitution for $86,950.00. After both parties requested a restitution hearing, the court entered restitution as $1,799.00, the amount indicated on the criminal information, and scheduled a restitution modification hearing for July 23, 2018.

At the restitution hearing, the victim, James Armstrong, testified that he had kept a detailed list of his coin purchases, compiled by Coinhouse, the establishment from which he bought the coins over the years. He presented two lists to the court: (1) one listing the purchase price he paid for all the coins that Appellant stole from him; and (2) one listing the "current value" of the coins taken from him, which was determined based upon how much coins similar to his had sold for on the Internet auction site, eBay, in the three months prior to the restitution hearing. The original cost of the coins stolen from him was $86,974.93. The market value of the coins when he checked

---

[1] Appellant worked for the victim off and on for three years, doing chores around the victim's 12-acre property. In September 2017, Appellant helped the victim move to another home. The victim discovered the theft of many rare coins in December 2017.

the eBay listings averaged $58,600.00.[2]  The victim further testified that unlike normal objects that depreciate over time, collectible coins are a commodity whose value fluctuates up and down with the market.  Tr. Ct. Op., at 2 (citations to Notes of Testimony omitted).[3]

After hearing the testimony and argument and reviewing the evidence, the court ordered Appellant to pay $86,974.93 as restitution to the victim, explaining:

> The [c]ourt finds [the victim's] testimony to be credible.  He's extremely knowledgeable about coins and their values.  This is a very interesting question, probably should be on a law school exam some day.
>
> The defense is right in that we don't normally give people what they paid for something.  You get market value and in other context[s,] you'd get the profit you get what it could be sold for; but, when you're dealing with something that is uniquely a collectible that has been stolen and then it's been put out on the market *en masse* at a time in a fluctuating market, I'm not sure that that's the fair valuation and here's why.
>
> . . . If you got coins or stamps or something that's recognized as a legitimate collectible with a longstanding market, the person who owns that item can [choose the] time when they sell that item on the market.  They're not going to take that collection and flood the entire collection at one time onto the market and take the highs and the lows hits.  They get to pick and choose when they put those items into the market, so they can choose to put their high-value items out into the market at a peak and hold onto those low-value items for the day that the valuation comes back

---

[2] The victim testified that some of the coins he had purchased had increased in value in the 12 years that he owned them, and some had decreased in value. N.T. Restitution, at 19.

[3] We note that the victim also testified that it would cost "perhaps" $150,000 to replace the stolen coins.  N.T. Restitution at 13.

up. That valuation can come back up because silver prices come back up, platinum prices come back up, gold comes back up.

You can have a situation where the value on the market comes back because there's a change of government in a certain country and that item is no longer going to be made, that nation no longer exists. So the collector sets the time of when it comes out on the market. When you have a thief who intervenes, the analogous situation is more like someone who comes in and grabs your stock portfolio and floods it out onto the market during a day when the Stock Market is taking a dip and then saying, well, the guy who owns the stocks gets the market value for that day. Well, that's not fair because the person who owns the stocks or the coins or the stamps would not have sold on that day.

So are we going to say that we're going to let the thief set the market price by having the thief through his misconduct set the date and the valuation of the items? That doesn't seem just. It doesn't seem like an accurate valuation either.

* * *

So what are we going to do with this? What we're going to do is we're going to give the aggrieved party the cost because that's the floor of what they lost here. They may well have lost more because, as I mentioned, with collectibles the timing of the sale is critical and what was stolen from the victim here was not only the coins but it was the opportunity to set the timing of when he would sell the collectibles and that's why we have a fluctuating situation here where the market value on a given day does not set the true value for the entire set because the entire set would not have been sold on a given day.

Accordingly, the [c]ourt finds that the true damage to [the victim] was what he paid for this collection[,] which is $86,974.93

N.T. Restitution, 7/23/18, at 26-30.

After the denial of his Motion for Reconsideration, Appellant timely appealed. He raises the following question for our review:

Did the sentencing court err in awarding restitution based on the initial cost of the items stolen as opposed to their market value at the time of the theft?

Appellant's Brief at 4, 13.

We review a trial court's decision regarding restitution for an abuse of discretion. **Commonwealth v. Rush**, 909 A.2d 805, 807 (Pa. Super. 2006).

Section 1106 of the Crimes Code states, "[u]pon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained . . . the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor." 18 Pa.C.S. § 1106(a). Restitution is mandatory and a part of a sentence. **Commonwealth v. Pleger**, 934 A.2d 715, 720 (Pa. Super. 2007).

A sentence of restitution is designed to impress "upon the offender the loss he has caused and his responsibility to repair that loss as far as it is possible to do so." **Commonwealth v. Wood,** 446 A.2d 948, 950 (Pa. Super. 1982) (citation, internal quotation marks, and emphasis omitted).

When determining the amount of restitution, Section 1106(c)(2) requires the trial court to "consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate." 18 Pa.C.S. § 1106(c)(2)(i).

Thus, "[t]o determine the correct amount of restitution, a 'but-for' test is used to identify damages which occurred as a direct result of the crime and which should not have occurred but for the defendant's criminal conduct." **Commonwealth v. Weir**, 201 A.3d 163, 171 (Pa. Super. 2018), *appeal*

*granted on other grounds,* 215 A.3d 966 (Pa. 2019) (quoting **Commonwealth v. Gerulis**, 616 A.2d 686, 697 (Pa. Super. 1992)). "Additionally, when imposing an order of restitution, the lower court must ensure that the record contains the factual basis for the appropriate amount of restitution." **Weir**, **supra** at 171 (quoting **Pleger**, **supra** at 720). "The dollar value of the injury suffered by the victim as a result of the crime assists the court in calculating the appropriate amount of restitution." **Weir**, **supra** at 171.

"Because restitution is a sentence, the amount ordered must be supported by the record, and may not be speculative." **Id**. (quoting **Commonwealth v. Reed**, 543 A.2d 587, 589 (Pa. Super. 1988). **See e.g., Commonwealth v. Boone**, 862 A.2d 639, 643-44 (Pa. Super. 2004) (reversing restitution order after finding the amount ordered was based on conflicting value estimates submitted by the parties and was, therefore, speculative).

In the instant case, the court ordered restitution to comport with the purchase price of the coins. However, the trial court also found that the market value of collectible coins fluctuates. Accordingly, utilizing the purchase price as the value of the coins at the time of their theft was speculative.

In light of the fluctuating nature of fair market value of the coins, the trial court should have relied upon expert testimony that would account for the fluctuations in the price of the coins over time to determine the fair market value of the coins at the time Appellant stole the coins. Accordingly, we

reverse and remand for an evidentiary hearing on the fair market value of the coins at the time Appellant stole the coins.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Lazarus joins the memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/25/2020