2021 PA Super 43

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK SEISIRO SOLOMON | : | |
| | : | |
| Appellant | : | No. 1407 MDA 2018 |

Appeal from the Order Entered July 23, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001122-2018

BEFORE: BENDER, P.J.E., BOWES, J., SHOGAN, J., LAZARUS, J., OLSON, J.,
DUBOW, J., KUNSELMAN, J., MURRAY, J., and McCAFFERY, J.

OPINION BY BOWES, J.:                                      Filed: March 16, 2021

A penny saved is a penny earned. But what is the worth of the coin once it is stolen? Patrick Seisiro Solomon stole collectible coins and now wants to cap his restitution liability at their market value at the time of the crime. The issue before us is whether the sentencing court abused its discretion in setting the restitution amount for the coins at their acquisition cost. As we conclude that the sentencing court committed no error of law or abuse of discretion in reaching its determination, we affirm.

The facts of this case are straightforward and undisputed. In late 2017 or early 2018, Appellant stole rare coins owned by James Armstrong and sold them for funds to support his drug habit. As a result, Appellant was charged with theft by unlawful taking and receiving stolen property. On June 6, 2018, Appellant agreed to plead guilty to the theft count, with the other count being

dismissed, for a sentence of three to twenty-three months of incarceration plus costs and restitution. The criminal information indicated that the coins were worth $1,799, but the Commonwealth represented at the plea hearing that the victim was claiming $86,950 in restitution. When accepting Appellant's plea, the trial court set restitution at the lesser amount, but scheduled a hearing for the Commonwealth to prove the larger amount.

The hearing took place on July 23, 2018.[1] The Commonwealth's evidence consisted of the testimony of the victim, Mr. Armstrong, as well as an exhibit that Mr. Armstrong prepared. The exhibit contained a seventeen-page typewritten list detailing Mr. Armstrong's coin acquisitions from 2004 through 2012 and indicating for each purchase a description, *i.e.*, the type of coins and the number in each set, as well as the price he paid.[2] **See** Commonwealth Exhibit 1. It also included a handwritten list of which coins Appellant stole, referencing the corresponding page and line of the typed list, and specifying for each the "current value" as well as the initial cost. **Id**. For some sets of coins the amounts were roughly the same; others had increased or decreased in value between the time Mr. Armstrong bought them and

---

[1] Appellant was represented by counsel at the restitution hearing, but he declined to appear himself.

[2] For example, one line-item purchase was of a six-coin set of 2008 Beijing Olympic gold and silver coins, while another was a thirteen-piece set of Morgan silver dollar coins from 1878 to 1892. **See** Commonwealth Exhibit 1.

Appellant's theft.  Overall, the original cost of the property Appellant stole was $86,974.93, while its "current value" was $58,600.  *Id*.

Mr. Armstrong testified that he started collecting coins in the late 1980s or early 1990s and kept them secured in a storage area in his home. Appellant, whom Mr. Armstrong knew for several years as someone he paid for occasional help to maintain his house and property, learned of the existence of the coin collection when he assisted Mr. Armstrong in moving the boxes to the garage of his new home.  *See* N.T. Restitution Hearing, 7/23/18, at 6-7, 9.  After Mr. Armstrong noticed that the boxes of coins had been rearranged more than once, he discovered that some were missing.  He went through and made the handwritten list of missing coins, although he only included coins that sold for more than $2,000, and believed that the list would have been longer if he "were willing to spend another three or four days on inventorying every single thing[.]"  *Id*. at 10.

Mr. Armstrong explained that he arrived at the "current value" figures through eBay.  He indicated that eBay trades heavily in coins and provides data about recent sales.  *Id*. at 14.  He looked though sales within the prior three months of coins comparable to those Appellant had stolen to "find out what the general average sales price was" for each set.  *Id*. at 15.  In instances where there were exceptionally high and low sales for the same item, Mr. Armstrong used "the cluster in between" to arrive at a value in the middle.  *Id*.

The trial court questioned Mr. Armstrong about the cause of the fluctuations in values of the coins. Mr. Armstrong indicated that the price at any given time is based upon "the collectability, the desirability, factors of how many were minted," the rarity of the coins, and the metal used (silver, gold, platinum, etc.). *Id*. at 17-20.

After entertaining argument from the parties, the trial court announced its findings. It indicated that it found Mr. Armstrong to be credible and "extremely knowledgeable about coins and their values."[3] *Id*. at 26. The court discussed various rationales for accepting different total values, but ultimately concluded that the cost to Mr. Armstrong to acquire the coins was the appropriate amount. Accordingly, it set restitution at $86,974.93. *Id*. at 29.

Appellant filed a timely post-sentence motion, asking the court to reconsider the restitution amount because the Commonwealth failed to prove "that the victim was entitled under law to recoup the full purchase price paid for the coins that were stolen." Motion for Post-Sentence Relief, 8/2/18, at unnumbered 2. Appellant maintained that the lesser amount, based upon the value of the coins at the time of Appellant's crime, should have been used. *Id*. The trial court denied the motion without a hearing, and Appellant filed a

---

[3] Appellant acknowledges that Mr. Armstrong was qualified to offer expert testimony as to the value of the coins at issue. *See* Appellant's substituted reply brief at 4-5.

timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On February 25, 2020, a divided panel of this Court reversed the restitution order and remanded for an evidentiary hearing to set the restitution amount based upon expert testimony of market value at the time of the theft. The Commonwealth timely applied for reargument *en banc*, which we granted on May 1, 2020, and withdrew the prior memoranda. The parties filed substituted briefs upon which they agreed to have this Court decide the case without oral argument. Hence, the appeal is ripe for disposition.

Appellant presents the following question for our review: "Did the sentencing court award speculative and excessive restitution where it based the award on the initial cost of stolen coins despite hearing evidence that the coins' current market value was almost $30,000 lower than their initial cost?" Appellant's substituted brief at 5.

As our Supreme Court recently affirmed, issues concerning amount of restitution implicate the discretionary aspects of a defendant's sentence. ***See Commonwealth v. Weir***, 239 A.3d 25, 38 (Pa. 2020). ***See also Commonwealth v. Biauce***, 162 A.3d 1133, 1138 (Pa.Super. 2017) ("An order of restitution is a sentence, thus, the amount awarded is within the sound discretion of the trial court and must be supported by the record." (cleaned up)). As such, Appellant has no absolute right to appellate review.

> Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine

whether the appellant has invoked our jurisdiction by considering the following four factors:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Commonwealth v. Samuel**, 102 A.3d 1001, 1006-07 (Pa.Super. 2014) (citations omitted).

Appellant preserved the issue in a timely post-sentence motion seeking reconsideration of his sentence and filed a timely notice of appeal. Appellant's brief contains a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). Further, Appellant's challenge to the amount of restitution set by the trial court presents a substantial question. **See**, **e.g.**, **Commonwealth v. Pappas**, 845 A.2d 829, 842 (Pa.Super. 2004) (stating substantial question was presented by the contention that there was insufficient evidence of the value of the stolen property to support the restitution award). Thus, we will address the merits of Appellant's claim.

To prevail, Appellant must demonstrate that the sentencing court abused its discretion. "In this context, an abuse of discretion is not shown merely by an error in judgment." **Commonwealth v. Antidormi**, 84 A.3d 736, 760 (Pa.Super. 2014). Rather, Appellant must "establish, by reference to the record, that the sentencing court ignored or misapplied the law,

exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Commonwealth v. Bullock***, 170 A.3d 1109, 1123 (Pa.Super. 2017). Discretion is abused in ordering speculative or excessive restitution or entering a restitution award not supported by the record. ***See Weir***, ***supra*** at 38; ***Commonwealth v. Crosley***, 180 A.3d 761, 771 (Pa.Super. 2018).

Appellant contends that the trial court misapplied the law in awarding "a speculative and excessive amount in restitution" rather than basing restitution on "market value or replacement cost[.]" Appellant's substituted brief at 17. Appellant maintains that "the general rule for property is to award its market value or replacement cost in restitution." ***Id***. at 20. While he acknowledges that no "particular method of valuation" is prescribed by the restitution statute, Appellant notes that the statute providing the grading of theft offenses defines "value" as "'the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime.'" ***Id***. (quoting 18 Pa.C.S. § 3903(c)(1)).

We consider the law applicable to Appellant's claim. Our legislature has defined restitution as "[t]he return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court." 18 Pa.C.S. § 1106(h). Restitution "is not a fine, but is an equitable remedy under which a person is restored to his or her original position prior to loss or injury; it is

the restoration of anything to its rightful owner or the act of making good or giving equivalent for any loss, damage or injury." ***Commonwealth v. Genovese***, 675 A.2d 331, 333 (Pa.Super. 1996) (quoting Black's Law Dictionary (6th ed. 1990)) (cleaned up).

Restitution is governed by § 1106 of the Crimes Code, which provides as follows in pertinent part:

> **(a) General rule.--**Upon conviction for any crime wherein:
>
>> (1) property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime; or
>>
>> (2) the victim, if an individual, suffered personal injury directly resulting from the crime,
>
> the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.
>
>> . . . .
>
> **(c) Mandatory restitution.--**
>
>> (1) The court shall order full restitution:
>>
>>> (i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other government agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any

restitution ordered for loss previously compensated by an insurance company to the insurance company.

. . . .

(2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:

(i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate.

(ii) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.

(iii) Shall not order incarceration of a defendant for failure to pay restitution if the failure results from the offender's inability to pay.

(iv) Shall consider any other preexisting orders imposed on the defendant, including, but not limited to, orders imposed under this title or any other title.

(3) The court may, at any time or upon the recommendation of the district attorney that is based on information received from the victim and the probation section of the county or other agent designated by the county commissioners of the county with the approval of the president judge to collect restitution, alter or amend any order of restitution made pursuant to paragraph (2), provided, however, that the court states its reasons and conclusions as a matter of record for any change or amendment to any previous order.

(4)  (i) It shall be the responsibility of the district attorneys of the respective counties to make a recommendation to the court at or prior to the time of sentencing as to the amount of restitution to be ordered. This recommendation shall be based upon information solicited by the district attorney and received from the victim.

(ii) Where the district attorney has solicited information from the victims as provided in subparagraph (i) and has received no response, the district attorney shall, based on other available information, make a recommendation to the court for restitution.

. . . .

**(g) Preservation of private remedies.--**No judgment or order of restitution shall debar the victim, by appropriate action, to recover from the offender as otherwise provided by law, provided that any civil award shall be reduced by the amount paid under the criminal judgment.

18 Pa.C.S. § 1106. Our legislature did not proffer definitions for the terms "full restitution," "fullest compensation," or "extent of injury," or otherwise provide guidance to courts beyond that quoted above, to direct a court's calculation of a restitution amount. However, decisions of our appellate courts shed light on the subject.

This Court has noted that "the primary purpose of restitution is rehabilitation of the offender by impressing upon him that his criminal conduct caused the victim's loss or personal injury and that it is his responsibility to repair the loss or injury as far as possible." *Commonwealth v. Mariani*, 869 A.2d 484, 486 (Pa.Super. 2005). "Restitution, by definition, as it relates to property damage, can be made by either the return of the original property or the payment of money necessary to replace, or to repair the damage to, the property." *Genovese*, *supra* at 333 (affirming judgment of sentence for careless driving conviction ordering restitution in the amount of damage caused to the victim's automobile). The dollar value of a victim's loss does

not necessarily set the restitution amount, but merely "assists the court in calculating the appropriate amount of restitution." *Commonwealth v. Burwell*, 58 A.3d 790, 794 (Pa.Super. 2012) (internal quotation marks omitted). Stated differently, "restitution is not damages, as the objectives are different, and because this is so, the amounts, although related, need not be coterminous." *Mariani*, *supra* at 486.

As our Supreme Court recently observed, "[t]here is nothing within [the restitution statute] that remotely relates to the quantity or quality of the evidence necessary to establish the amount of the victim's loss." *Weir*, *supra* at 38. Rather, the statute broadly provides that "[i]n determining the amount and method of restitution, the court: (i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney . . . and such other matters as it deems appropriate." 18 Pa.C.S. § 1106(c)(2). Then, regardless of any other recovery for the stolen or damaged property, and "[r]egardless of the current financial resources of the defendant," the court must order restitution "so as to provide the victim with **the fullest compensation** for the loss." 18 Pa.C.S. § 1106(c)(1)(i) (emphasis added).

Nonetheless, there are limits to a sentencing court's discretion in determining a restitution amount. "Restitution may be imposed only for those crimes to property or person where the victim suffered a loss that flows from the conduct that forms the basis of the crime for which the defendant is

convicted." ***Commonwealth v. Boone***, 862 A.2d 639, 643 (Pa.Super. 2004). In other words, when "restitution as part of a sentence, there must be a direct nexus between the restitution ordered and the crime for which the defendant was convicted." ***Commonwealth v. Risoldi***, 238 A.3d 434, 461 (Pa.Super. 2020). Further, the amount ordered must be supported by the record; it may not be speculative or excessive." ***Commonwealth v. Pappas***, 845 A.2d 829, 842 (Pa.Super. 2004). ***See also Commonwealth v. Pleger***, 934 A.2d 715, 720 (Pa.Super. 2007) ("A restitution award must not exceed the victim's losses.").

For example, in ***Commonwealth v. Poplawski***, 158 A.3d 671, 675 (Pa.Super. 2017), we vacated a restitution award that was neither caused by the defendant's crime nor supported by the evidence. In that case, the defendant was charged with various crimes after he accepted an advance payment of $2,000 for home improvement work that he ultimately failed to perform. The victim paid another contractor over $41,000 to complete the work. A jury convicted the defendant of home improvement fraud, but acquitted him of theft by deception and deceptive or fraudulent business practices. The sentencing court ordered restitution for the $41,000 amount, indicating that, but for the defendant's actions, the victim would not have paid the other contractor. This Court disagreed. First, since the only crime the defendant was convicted for was failing to do the work or return the $2,000 advance payment, and he was acquitted of the crimes related to the quality

or quantity of services, there was no nexus between the restitution amount and the crime. Second, the record did not indicate whether the $41,000 "was damages the jury either did not recognize or criminalize, or whether it was money [the victim] would have had to expend to complete the project regardless of [the defendant's] involvement." *Id*. at 675. Hence, the order could not stand because "the amount of restitution ordered was neither a direct result of [the defendant's] criminal conduct, nor was it supported by the record." *Id*. *See also Risoldi*, *supra* at 464-65 (vacating restitution award based upon damages associated only with charges of which the jury acquitted the defendant).

This Court considered an atypical restitution issue in *Commonwealth v. Boone*, 862 A.2d 639 (Pa.Super. 2004). In that case, the defendants gained control over uninhabited, fire-damaged properties, acquired title through forging and recording deeds conveying the property to themselves, and used them as collateral to obtain mortgage loans exceeding $300,000. The sentencing court assigned an aggregate restitution value of $63,921 to the properties. On appeal, this Court agreed with the Commonwealth that the decision to order monetary restitution was an abuse of discretion. We noted that the victim's damages were equal to the value of the real estate at the time the defendants took possession, but the lack of evidence of that value, "coupled with the disparity between the current and pre-improvement values,

- 13 -

ma[de it] clear that the trial court did not calculate the amount of restitution with the requisite degree of accuracy." **Id**. at 644.

Accomplishing the purpose of the restitution statute, we stated, required returning the property to the rightful owners. The Commonwealth proposed to do so through a court order directing the recorder of deeds to strike off the fraudulent deed. However, we crafted a different solution:

> Monetary restitution alone is, as noted, inadequate in this situation, and more than mere possession is necessary to qualify as complete recompense given the nature of the loss sustained. Thus further steps, to restore title, must be undertaken to return the property to the victims. And, although the Commonwealth's proposed order represented an attempt to rectify the omission, it is no[t] part of the sentencing code for the court to direct the activities of the Recorder of Deeds. A private remedy, which in the context is civil in nature, is thus necessarily implicated, and the language of the statute places on the victim(s) the onus of investigating and applying the correct procedure. The only procedure designed to accomplish the necessary correction of the deeds is an action to quiet title.

> Accordingly the sequence to be followed is first, for possession of the property to be transferred by order of the court to the original title holders, that is, to order that [the defendants] make restitution to that extent since they cannot transfer title they do not have. . . . They may, however, be ordered to relinquish possession, which under the terms of the statute returns that aspect of the property they do have. Once the victims gain possession, they may seek to quiet title under Pa.R.C.P. 1061, since only a party in possession may commence such a suit. Under circumstances such as those involved here, the action would be resolvable on the basis of the pleadings alone. While these proceedings may well be regarded as *pro forma*, they are nevertheless consistent with section 1106(g), and have the further advantage of producing incontestably valid title to the property. We accordingly remand for these procedures to be instituted.

**Id**. at 644–45 (cleaned up).

- 14 -

Hence, a restitution order that fails both to have a direct nexus to a crime for which the defendant was convicted and to have evidentiary support for the amount will be vacated by this Court. When, on the contrary, the restitution has a direct nexus to the crime and is supported by the record, this Court has accepted a wide range of restitution determinations as authorized by § 1106. For example, in **Commonwealth v. Lock**, 233 A.3d 888 (Pa.Super. 2020), we affirmed a restitution sentence based upon repair costs, rather than the value of the property before it was damaged, since it flowed from the defendant's crime and was supported by the record. In that case, the defendant was convicted of failing to keep his dog on his own premises after it attacked a neighbor's cat. The sentencing court ordered restitution in the amount of $9,331.43, which was the costs of the veterinary bills for the cat's treatment. The defendant argued that § 1106 capped restitution at "the amount by which the value of the pet has been substantially decreased." **Id**. at 889 (internal quotation marks omitted).

This Court rejected the claim that restitution was limited to the decrease in value of the cat, reiterating that § 1106 did not specify a single means of calculating restitution, but rather allowed for an amount necessary to repair the property damaged as a result of the crime. **Id**. at 892. Nor did we accept the defendant's argument that the restitution order was invalid because the amount exceeded the value of the cat. While the record contained no evidence of the cat's value, it did fully support the determination of the value of the

veterinary services; thus, the award in the amount of the veterinary bills, which were incurred as a result of the defendant's crime, was within the sentencing court's statutory authority. *Id*. at 892 n.4.

In **Burwell**, **supra**, the defendant injured the victim with an electric guitar, causing broken bones and numbness that lasted for months. A jury convicted him of aggravated assault, and his sentence included restitution of $2,800 in lost wages. We affirmed the order, holding that such an award furthered the mandate of § 1106 to provide the victim with the fullest compensation for his losses, and that the record supported the amount, as the victim testified to his average monthly earnings prior to the assault and presented corroborating documentation. *Id*. at 794-95.

Appellant has not cited a single case in which this Court disturbed a mandatory restitution order that had a direct nexus to the defendant's conviction and was supported by the record. Nor have we found one. Moreover, neither the parties nor this Court has located authority addressing the type of property at issue in the case *sub judice*. Mr. Armstrong's loss is not of past medical bills or future earnings, or of fungible, depreciating property that may readily be replaced, such as an automobile or a television. Nor is Appellant capable of returning the coins, which he pawned for far less than their value, to Mr. Armstrong. Rather, Appellant has forever deprived Mr. Armstrong of rare collectibles that he acquired, piece by piece, over many years, searching for those in perfect condition, with zero flaws under a certain

power of magnification. **See** N.T. Restitution Hearing, 7/23/18, at 13. Nowhere can Mr. Armstrong go to reacquire the whole of what Appellant stole. Hence, we must apply the general principles gleaned from the above-discussed cases concerning the purposes of restitution and the scope of the sentencing court's discretion to our review of the sentencing court's resolution of this novel circumstance.

In arguing that the sentencing court abused its discretion in setting the valuation of Mr. Armstrong's loss, Appellant acknowledges that restitution is an equitable remedy, and that § 1106 provides no specific formula for its calculation. **See** Appellant's substituted brief at 20. However, in arguing that the trial court's use of the purchase price of the coins is a misapplication of the law, Appellant suggests that the only acceptable method for determining the value of stolen property in cases where the record establishes the market value of the property when it was stolen is to effectuate the definition of "value" provided for the grading of theft offenses. **Id**. (citing 18 Pa.C.S. § 3903(c)(1) ("[V]alue means the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime."). Appellant maintains that such definition is in accord with "the general rule" of setting market value or replacement cost as the amount of restitution for stolen or damaged property. **Id**. (citing **Genovese**, **supra** at 333).

Appellant's argument proves too much. He has established that our legislature clearly knew how to provide a limited definition of the value of stolen property, and it could have specified its applicability to § 1106 if it wanted to constrain a sentencing court's discretion in imposing restitution. Instead, it opted for a flexible standard left to the discretion of a sentencing court in light of the specific circumstances of each case, requiring the amount of restitution to be based not only upon the extent of the injury suffered by the victim, but also "such other matters that it deems appropriate." 18 Pa.C.S. § 1106(c)(2)(i). Moreover, this Court has rejected the notion that a sentencing court's discretion in rendering a restitution order is circumscribed by the amount relevant to the grading the offense. *See Commonwealth v. Wright*, 722 A.2d 157, 160 (Pa.Super. 1998) (affirming restitution order of more than $20,000 although the jury had found the victim's loss to be between $1,000 and $5,000).[4]

In light of our legislature's demand for restitution to constitute the fullest compensation for a victim's loss, and the sentencing court's freedom to

---

[4] In *Commonwealth v. Poplawski*, 158 A.3d 671, 675 (Pa.Super. 2017), this Court suggested that the holding in *Wright* was limited to circumstances where the full amount of the loss was not known at the time the fact finder made its findings relevant to grading the offenses. However, since the *Poplawski* Court held that the restitution amount was not related to a crime for which the defendant was convicted and was not supported by the record, its discussion of *Wright* was *dicta*. *See also Commonwealth v. Dohner*, 725 A.2d 822, 824 (Pa.Super. 1999) (affirming restitution award of $2,000 that was supported by the record although the jury determined that the theft was less than $50).

consider any matters it deems appropriate in determining the proper amount, we cannot agree with Appellant that the value of the coin collection at the time he wrongfully acquired it was necessarily the proper measure. The limitation simply is not supported by the language of the statute or by the cases applying it discussed *supra*. **See**, **e.g.**, **Lock**, **supra** at 892 n.4 (rejecting argument that restitution amount was capped at the value of the cat at the time it was injured by the defendant's dog); **Boone**, **supra** at 643-44 (holding restitution order in the amount of the market value of fraudulently-obtained real estate was in inadequate award for unique property).

Appellant alternatively concedes that there indeed "may be some cases where there is a better metric for restitution than market value," but contends that "this is not one of them." Appellant's substituted reply brief at 6. In fact, Appellant acknowledges that awarding the replacement costs of the property taken "makes the victim whole by creating the opportunity to repurchase that property and restore the pre-theft state of affairs." Appellant's substituted brief at 21-22. However, Appellant conflates replacement costs at the time of the restitution order with market value at the time of the theft, **see id**., something that simply is not true where the stolen property fluctuates in value.

Indeed, the record reflects that the replacement value of the whole collection at the time of the restitution hearing was substantially greater than the market value of the sum of its parts at the time it was unlawfully taken by

Appellant. Appellant's counsel, in cross-examining the victim, attempted to elicit a concession that the coins would never again be worth more than the $58,600 market value they held at the time of the theft. Mr. Armstrong testified that "they already are," and explained again the impact of collectability and desirability over time. N.T. Restitution Hearing, 7/23/18, at 19. Yet, rather than offer an updated market value supported by recent sales of similar coins, Mr. Armstrong vaguely posited that it would cost "[$]150,000 perhaps" to recreate his collection at that point. N.T. Restitution Hearing, 7/23/18, at 13-14. Given the uncertain and unsubstantiated nature of this evidence, it would have been an abuse of discretion on the part of the trial court to set replacement costs as the full measure of Mr. Armstrong's loss. *See*, *e.g.*, ***Commonwealth v. Rotola***, 173 A.3d 831, 834 (Pa.Super. 2017) ("Although an award of restitution lies within the discretion of the trial court, it should not be speculative or excessive and we must vacate a restitution order which is not supported by the record." (cleaned up)).

In electing to set Mr. Armstrong's acquisition costs as the full value of Mr. Armstrong's loss, rather than the market values at the time of the theft of the individual coins and sets that comprised the collection, the sentencing court offered the following explanation:

> While current market value of an item may be an appropriate remedy for restitution concerning personal property, this case is distinct from the typical theft of personal property situation. A typical item of personal property depreciates in value over time, as wear and tear take their toll on it. In the case of collectibles, like the coins taken from the victim, there is a longstanding

recognized legitimate marketplace, where values fluctuate based upon demand and actions by other participants in that marketplace. A collector who participates in that marketplace must be strategic in their decisions to place their items into the market at the proper moment, in an attempt to maximize value.

Though the coins themselves are tangible personal property, the actions of [Appellant] are more analogous to the situation where someone steals a victim's stock portfolio and sells the stocks on a day when the market is down. Instead of the rightful owner getting to sell the stocks at their maximum value on a day of their choosing, a third party that caused them harm gets to set their deflated value and the victim must live with the injurious economic consequences of this bad actor.

A more just outcome is to award the victim what it initially cost that person to acquire the items, as that sets the real economic damage of what was taken from the bona fide owner. . . . In a situation such as this, the loss suffered by the victim to the collectibles was not only the market value of the coins on the date of the theft, but the opportunity to set the timing of the sale for a more beneficial day in the fluctuating market. The record supports the amount ordered, as the victim was very thorough in calculating the purchase price for the coins. As such, the amount of restitution the [c]ourt ordered . . . makes the victim whole, rather than making him suffer a loss artificially initiated in the down market by [Appellant]'s malfeasance, a loss the owner would not have suffered but for the [Appellant]'s untimely misconduct.

Trial Court Opinion, 4/25/19, at 3-4.

This thoughtful consideration of the extent of the victim's loss in light of the atypical property involved evinces an utterly reasonable exercise of the sentencing court's considerable sentencing discretion. It entered a restitution order providing compensation for a loss that the victim would not have sustained but for Appellant's crime, and the amount chosen by the sentencing court representing that loss that is supported by the record. As such, we

discern no conflict with any provision of § 1106, nor any indication that the trial court otherwise "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." **Bullock**, **supra** at 1123.

Consequently, in accordance with this Court's duty when presented with the requisite nexus between the crime and a restitution amount reasonably calculated based upon record evidence, we may not disturb the sentencing court's exercise of discretion. Therefore, Appellant is entitled to no relief.

Order affirmed.

President Judge Emeritus Bender, Judge Shogan, Judge Olson, Judge Kunselman, Judge Murray, and Judge McCaffery join this Opinion.

Judge Dubow files a Dissenting Opinion in which Judge Lazarus joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/16/2021